Margaret E. RYAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–95–015CR.

Court of Appeals of Texas,
Beaumont.

Submitted June 27, 1996.

Decided Dec. 19, 1996.

John D. MacDonald, II, Conroe, for appellant.

Daniel Rice, District Attorney, Gail Kikawa McConnell, Assistant District Attorney, Conroe, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellant Margaret Elizabeth Ryan was convicted by a jury of two counts of possession of a controlled substance by fraud. The court assessed punishment and sentenced Ryan to forty years' confinement in the Texas Department of Criminal Justice, Institutional Division.

## FACTS

John Van Alstein, the managing pharmacist of Wal–Mart Pharmacy on Sawdust Road in The Woodlands, testified he received a telephone prescription for diazepam on February 18, 1994 for a Margaret Ryan. The person calling in the prescription identified herself as Dr. Bodas' nurse. At trial, Van Alstein identified the person who picked up the prescription the afternoon of February 18 as the defendant, Margaret Ryan. The February 18 incident is Count I of the indictment.

On February 19, 1994, Deputy Toby Swansey came into the pharmacy and asked Van Alstein if he had received any prescriptions for a Margaret Ryan. Van Alstein responded affirmatively and told Swansey about the prescription of the previous day. According to Van Alstein, Swansey said the prescription was "bogus" and requested Van Alstein to alert Swansey's office if he saw her again.

On February 21, 1994, a prescription for Xanax was called into Van Alstein for a Gary Powers. The caller identified herself as Laura, calling for Dr. Ang's office. Van Alstein testified he was suspicious about the prescription because he had never heard of Dr. Ang, Gary Powers was not a regular customer, and the address given for Powers was a Houston address, rather than The Woodlands or other nearby location. Shortly after taking this prescription, Van Alstein received a call from someone in the sheriff's depart-

ment, who alerted him to "bogus prescriptions" being called in under the name of Gary Powers. Van Alstein informed the police about the prescription for Powers. Van Alstein testified that both diazepam and xanax are controlled substances and are used as tranquilizers.

On February 22, 1994, Van Alstein received a call from a female who wanted to know if the prescription for Powers was ready. According to Van Alstein, she told him she was going to pay for it with an insurance card. Margaret Ryan came to Wal–Mart Pharmacy on February 22 and presented Powers' prescription card to Van Alstein. The police were called, and Ryan was arrested and taken to jail. To confirm the validity of the prescription, Van Alstein called Dr. Ang's office and was informed that Dr. Ang had not called in the prescription. The February 22 incident is Count II of the indictment.

## POINT OF ERROR ONE

Appellant raises three points of error on appeal. In Point of Error One, appellant argues the trial court abused its discretion when it denied appellant's motion for new trial without an evidentiary hearing.[1] On December 16, 1994, appellant filed a *pro se* handwritten Motion For New Trial and a Sworn Pauper's Oath/Affidavit. On December 26, 1994, appellant filed a *pro se* typed Motion For New Trial, based on the following grounds:

1. Defendant was not responsible for her criminal conduct at the time of said crime due to a mental disease or defect.

2. Defendant was unable to assist her own defense due to her mental disease and/or defects.

3. Defendant was not capable of understanding the wrongfulness of her conduct or to conform her conduct to the requirements of the law.

4. Defendant had inadequate counsel.

5. Defendant's witnesses were not informed of the defendant's trial, therefore leaving out testimony that could have cleared the defendant.

Both motions were filed within the 30 day time-frame prescribed by TEX.R.APP. P. 31(c)(1).

The trial court must have concluded Ryan's motion for new trial was sufficient under the law to warrant a hearing, since it conducted a hearing on January 27, 1995, on both the motion for new trial and the indigency status of appellant. Although the motion was not presented within the ten day time-frame contemplated by Rule 31(c)(1), it was, nevertheless, within the judge's discretion to allow presentment and hearing at any time within the 75 day time frame. *See* Rule 31(c)(1). We conclude the hearing on January 27 constituted presentment of the motion for new trial, as required by Rule 31. *See State v. Balderas*, 915 S.W.2d 913, 916 (Tex. App.—Houston [1st Dist.] 1996, pet. filed).

At the January 27 hearing, the trial court became aware of the fact Ryan was not represented by counsel; the trial judge informed Ryan he would appoint an attorney to represent her. Reflecting the judge's comment to that effect is a letter, dated February 2, 1995, in the record on appeal in which the trial court notified an attorney of his appointment as Ryan's counsel. Appellant's counsel on appeal raised no objection regarding the timeliness of the court's notification by letter of the appointment.

In addition to the February 2 letter notifying counsel of his appointment, there is also in the record an "Order Setting Hearing" in which the trial court set the hearing on the motion for new trial for February 24, 1995; that date, as it turned out, was three days after the motion for new trial was overruled by operation of law.

The instant case has procedural issues similar to those in *Vera v. State*, 836 S.W.2d 344, 347 (Tex.App.—Amarillo 1992, no pet.). There, the trial court set the hearing date on the motion for new trial some 86

---

1. Appellant's motion for new trial was actually overruled by operation of law on February 21, 1995.

days after sentence was imposed. The Amarillo Court found it to be an abuse of discretion since Vera had complied with the requirements of TEX.R.APP. P. 31 by timely filing and presenting a motion for new trial which raised matters extrinsic to the record and was supported by affidavit. The Amarillo court found the trial court's action in setting the hearing date more than 75 days after the date sentence was imposed to be a denial of a hearing in a case where the defendant had a right to a hearing and thus an abuse of discretion.

In the instant case, the trial court did not deny the appellant the right to have a hearing. In fact, the trial judge held an initial hearing, determined the appellant was not represented by counsel, appointed an attorney to represent her, and scheduled another hearing on the motion for new trial at a later date, albeit three days after the motion was overruled by operation of law. The burden was on appellant, through her appointed counsel, to request and obtain a hearing on her motion prior to the 75th day after imposition of sentence. *See Brooks v. State,* 894 S.W.2d 843, 847 (Tex.App.—Tyler 1995, no pet.).

In *Johnson v. State,* 925 S.W.2d 745, 747–749 (Tex.App.—Fort Worth 1996, pet. ref'd), another case with procedural issues similar to those in the instant case, the appellant claimed the trial court erred by refusing to *complete* a hearing on Johnson's amended motion for new trial after the initial May 5, 1995 hearing was interrupted by a bomb threat. A subsequent hearing was held on August 24, 1995, at which time the trial court determined it no longer had jurisdiction on the motion for new trial because the motion had already been overruled by operation of law. *Id.* at 748 (citing *State ex rel. Cobb v. Godfrey,* 739 S.W.2d 47, 49 (Tex.Crim.App. 1987)).

In reviewing the trial court record, the appellate court in *Johnson* found no docket notations, motions, writs, hearing transcripts, or any other written indication that Johnson made any attempt before the August 24 hearing to schedule a continuation of the hearing. The appellate court concluded it was incumbent upon Johnson, before the expiration of the trial court's jurisdiction, to develop some record, which would demonstrate his efforts to reschedule the hearing. *Johnson,* 925 S.W.2d at 748. The appellate court held the burden is on the appellant to provide evidence of his efforts if he wishes to argue he falls within an exception to the rules. *Id.* at 748.

In the instant case, an attorney was notified of his appointment in advance of February 21, the date the motion for new trial would be overruled by operation of law. For some reason, the trial court set the date for another hearing on the motion for new trial for February 24. There is nothing in the record to indicate any efforts by appellant to obtain another hearing prior to the February 21 deadline. Furthermore, appellant does not argue on appeal she falls within any "good cause" exception necessitating or allowing suspension of the time limits of Rule 31. *See* TEX.R.APP. P. 2(b). Like the court in *Johnson, supra,* we conclude it was incumbent on appellant's attorney to either obtain a hearing prior to February 21 or demonstrate why Ryan falls within an exception to the rules. Appellant did neither; we overrule point of error one.

## POINT OF ERROR TWO

In point of error two appellant claims ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 9, of the Texas Constitution. Appellant cites, among others, the following instances of ineffective assistance allegedly rendered by her trial attorney:

1. Only two pretrial motions were filed, those being a Motion for Psychological Evaluation and a Motion for Probation and Punishment Assessment.

2. Trial counsel did not object to inadmissible and harmful testimony—specifically the repeated references in John Van Alstein's testimony to conversations with out-of-court declarants.

3. Appellant's attorney failed to object to extraneous offense testimony.

4. Trial counsel failed to conduct effective cross-examination.

5. Trial counsel failed to object to an instruction in the charge on the law of parties and failed to ask for a limiting instruction on the use of extraneous offenses.

To show ineffective assistance of counsel, appellant must demonstrate (1) his trial counsel's performance was deficient because it fell below an objective standard of reasonableness and (2) there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Rodriguez v. State*, 899 S.W.2d 658, 664 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995). "Whether the *Strickland* standard has been met is to be judged by the 'totality of the representation,' rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of trial. The burden of proving ineffectiveness rests upon the defendant by a preponderance of the evidence." *Id.* at 665 (citations omitted). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland v. State*, 928 S.W.2d 482 (Tex. Crim.App.1996) *cert. denied*, —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); *Ex parte Cruz*, 739 S.W.2d 53, 59 (Tex.Crim. App.1987). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071.

The review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Appellant can rebut this presumption by showing (1) his attorney's representation was unreasonable under prevailing professional norms, and (2) the challenged action was not sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994); *Howard v. State*, 894 S.W.2d 104, 106 (Tex. App.—Beaumont 1995, pet. ref'd). We do not inquire into trial strategy unless no possible basis exists in strategy or tactics for trial counsel's action. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex.Crim.App.1981); *Weeks v. State*, 894 S.W.2d 390, 391 (Tex.App.— Dallas 1994, no pet.).

In order to meet the first prong of the *Strickland* test, appellant must not only specifically identify the deficiencies in counsel's performance, but must, in those cases where an objection would be necessary, also identify the specific objection which should have been made and provide authority in support of his argument that the objection would have been meritorious. *See Valdes–Fuerte v. State*, 892 S.W.2d 103, 112 (Tex. App.—San Antonio 1994, no pet.)(citing *Simms v. State*, 848 S.W.2d 754, 758 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd)). When the record contains no evidence of the reasoning behind trial counsel's action, we cannot conclude counsel's performance was deficient. *See Jackson*, 877 S.W.2d at 771– 772. A silent record does not require an appellate court to speculate on the reason for trial counsel's decisions. *Id.* at 771. Justice Baird made the following observation in his concurring opinion in *Jackson*:

[A] trial record is generally insufficient to address claims of ineffective assistance of counsel in light of the 'strong presumption that [trial] counsel's conduct falls within the wide range of reasonable professional assistance.' ... A trial record is directed to the issues of guilt/innocence and punishment. And we review that record with an eye toward the errors allegedly committed in relation to those issues. However, in order to effectively argue an issue of ineffective assistance of counsel, a record focused on the conduct of trial or appellate counsel should be developed. Such a record is generally best developed in the context of a hearing held in relation to an application for writ of habeas corpus.

*Id.* at 772 (citations omitted). "However, when a 'cold record' clearly confirms that no reasonable trial counsel could have made such trial decisions, to hold counsel ineffective is not speculation." *Weeks*, 894 S.W.2d at 392. *See also Vasquez v. State*, 830 S.W.2d 948, 950–51 (Tex.Crim.App.1992).

We look first at appellant's claim of ineffective assistance regarding the admis-

sion of extraneous offenses. Appellant points to Deputy Swansey's statements concerning the deputy's investigation of alleged attempts by appellant to obtain fraudulent prescriptions from other pharmacies besides Wal–Mart. As the record reflects, Officer Swansey testified he told Van Alstein there was a person going around calling in fraudulent prescriptions. "I advised him to be alert and on the lookout, you know, for calls in the name of a Margaret Ryan or Gary Powers...." On cross-examination, defense counsel asked Swansey where he obtained the information about the bogus prescriptions. Swansey responded he originally received a call from a Randall's pharmacist, who told Swansey he had verified there was a bogus phone-in prescription in the name of Margaret Ryan. Swansey further testified he was advised by the Randall's pharmacist someone identifying herself as Margaret Ryan had phoned in several times and wanted to know if the prescription was ready. The inquiry by defense counsel left the door open for the State to further inquire about the call-in prescriptions at Randall's. When specifically asked by the State about prescriptions at Randall's, Swansey also brought up Kroger's Pharmacy. With no objection by defense counsel, the State proceeded to inquire about prescriptions in her name at Kroger's, as well as Randall's. Subsequent to Swansey's testimony, the State called the pharmacists at Kroger's and Randall's, who both testified to records verifying numerous phone-in prescriptions for a Margaret Ryan.

◼ In determining whether counsel rendered deficient performance in failing to object to the admission of evidence regarding extraneous offenses and, as alleged by appellant, in "opening the door" to allow in additional evidence on those offenses, we must decide whether the extraneous offenses were objectionable in the first place. An attorney's failure to object to admissible testimony does not constitute ineffective assistance. *Cooper v. State,* 707 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). *See also Richards v. State,* 912 S.W.2d 374, 379 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd).

The general rule is that evidence of extraneous offenses is inadmissible to show character conformity. TEX.R.CRIM. EVID. 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

TEX.R.CRIM. EVID. 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Together Rules 404(b) and 403 provide that evidence of extraneous offenses (or "bad acts") is admissible only if (1) it is relevant apart from its tendency to show character conformity, and (2) it is probative of some "elemental fact or an evidentiary fact of consequence to determination of the action." *Vernon v. State,* 841 S.W.2d 407, 411 (Tex. Crim.App.1992).

The State argues the evidence of extraneous offenses was admissible under one of the exceptions to Rule 404(b), because the previous "bad acts" demonstrate Ryan's intent to commit the offense charged. The fact that there are other similar instances of these unauthorized phone-in prescriptions in appellant's name demonstrates there was no innocent intent in obtaining or attempting to obtain the unauthorized prescriptions at Wal–Mart Pharmacy. According to the State, the telephonic prescriptions, all placed within a year of defendant's arrest, were similar to the telephone prescriptions in counts I and II on February 18 and February 22 at Wal–Mart and were relevant to whether appellant obtained those prescriptions with innocent intent. In regards to the

unauthorized, phone-in prescriptions in her name at Kroger's and Randall's, appellant admitted she picked up those prescriptions, testified she believed Dr. Bodas was authorizing them. Appellant also explained she believed Dr. Bodas had authorized her February 18 prescription at Wal–Mart. In regard to the February 22 prescription for Gary Powers, she testified she never intended to pick it up, but only to have information from Powers' insurance card put in the pharmacy's records. Intent, therefore, was a material, contested issue in both counts with which Ryan was charged.

Intent is also an essential element of the offense of possession of a controlled substance by fraud. TEX. HEALTH & SAFETY CODE ANN. § 481.129(a)(4) (Vernon 1992). "[W]here intent or guilty knowledge is an essential element of the offense which the State must prove to obtain a conviction, its materiality goes without saying." *Morgan v. State,* 692 S.W.2d 877, 880 (Tex.Crim.App. 1985). *Accord Wiggins v. State,* 778 S.W.2d 877, 882 (Tex.App.—Dallas 1989, pet. ref'd). Evidence of extraneous acts is admissible "[t]o prove scienter, where intent or guilty knowledge is an essential element of the State's case and *cannot be inferred from the act itself."* *Morgan,* 692 S.W.2d at 880 (quoting *Albrecht v. State,* 486 S.W.2d 97, 101 (Tex.Crim.App.1972)). *Accord Suarez v. State,* 901 S.W.2d 712, 720 (Tex.App.—Corpus Christi 1995, pet. ref'd). The Court of Criminal Appeals stated in *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App. 1990):

[A] party may introduce ... evidence where it logically serves 'to make ... more probable or less probable' an elemental fact; where it serves 'to make ... more probable or less probable' an evidentiary fact that inferentially leads to an elemental fact; or where it serves 'to make ... more probable or less probable' defensive evidence that undermines an elemental fact.

In appellant's case, there was no direct evidence of her intent, and intent could not necessarily be inferred from the act itself. The evidence of the prior acts at Randall's and Kroger's pharmacies was relevant under TEX.R.APP. P. 402 to establish that Ryan's

obtaining or attempting to obtain the unauthorized prescriptions at Wal–Mart was an intentional act on her part and took place as part of an ongoing conscious, intentional plan or scheme for fraudulently obtaining prescriptions. Further, the admission of the bad acts rebuts the defensive theory that Dr. Bodas authorized the February 18 prescription at Wal–Mart, as well as her contention that she had no intention of obtaining or attempting to obtain Powers' prescription on February 22.

The evidence of the extraneous acts at Randall's and Kroger's has relevance to a fact of consequence in the case and is probative of the elemental fact of intent—namely that Ryan intended to fraudulently possess the unauthorized prescriptions at Wal–Mart. Testimony that Ryan obtained two unauthorized prescriptions at Randall's and Kroger's, called in by a person alleging she was from Dr. Bodas' office, makes it more likely that appellant did not act accidentally, but with intent, in the counts charged herein.

We, therefore, conclude the evidence is relevant under TEX.R.CRIM. EVID. 401 to a fact of consequence in the case other than character conformity and is admissible under Rule 404(b) to show intent, plan, and absence of mistake. *See Keller v. State,* 818 S.W.2d 425, 428–29 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd)(in prosecution for theft of service by deception, evidence of four instances of defendant's failure to pay others on four prior occasions for services or parts was relevant to the crime charged and admissible to show intent.). The evidence of extraneous offenses was admissible under Rule 404b.

Even though relevant, the extraneous offenses may still be excluded under Rule 403. Testimony concerning appellant's acts at Randall's and Kroger's in obtaining unauthorized prescriptions, which were called in by phone allegedly from Dr. Bodas' office, is highly probative evidence of whether the incidents at Wal–Mart involved the intentional obtaining of, or attempting to obtain, prescriptions by fraud. In balancing the probative value versus the prejudicial value, the following relevant criteria are considered:

1. Was the ultimate issue seriously contested by Ryan?
2. Did the State have other convincing evidence to establish the ultimate issue to which the extraneous conduct was relevant?
3. Was the probative value of the misconduct evidence, either alone or in combination with other evidence, particularly compelling?
4. Was the nature of such misconduct such that a jury instruction to disregard it for any but its proffered purpose would have been efficacious?

*Montgomery,* 810 S.W.2d at 392–93.

In applying this criteria to the instant case, we note the issue of intent was seriously contested by Ryan. The State did not have other convincing evidence to establish intent. Ryan testified she did not intend to obtain the February 18 prescription by fraud and that she, instead, thought Dr. Bodas had authorized it; that she never intended to obtain the February 22 prescription at all, but had merely gone to Wal–Mart Pharmacy to present information for Gary Powers regarding an insurance card. The probative value of the misconduct evidence was compelling, because it serves to establish the acts at Wal–Mart were intentional, not accidental. A jury instruction regarding the use of the extraneous offenses only for the purpose of showing intent would have been effective. The probative value of the evidence is great, and in view of *Montgomery,* 810 S.W.2d at 388, we presume the "probativeness is the weightier consideration. . . ." Any prejudicial aspects of the extraneous acts in this case are outweighed by the greater probative value of the evidence, as noted above.

Thus we conclude that when the criteria in *Montgomery* are applied to the issue of intent, evidence of the extraneous acts herein is admissible to prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself. Because the evidence of extraneous offenses is admissible under Rules 402, 404b, and 403, trial counsel was not required to object to Deputy Swansey's testimony or that of the pharmacists from Randall's and Kroger's. As noted previously, failure to object to admissible testimony is not ineffective assistance of counsel. *Cooper,* 707 S.W.2d at 689.

■ Appellant also alleges that trial counsel rendered ineffective assistance by failing to object to repeated instances of hearsay testimony, particularly from John Van Alstein, the Wal–Mart pharmacist. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex.R.Crim. Evid. 801(d).

■ At trial, Van Alstein testified to the following:

1. A person claiming to be Dr. Bodas' nurse called in a prescription for a Margaret Ryan on February 18, 1994.
2. On February 19, 1994, Deputy Swansey came into the pharmacy and asked if Van Alstein had received any prescriptions for a Margaret Ryan; Van Alstein said Swansey told him the prescriptions were bogus.
3. On February 21, 1994, a person claiming to be Laura, and calling for Dr. Ang's office, phoned in a prescription to Wal–Mart for Gary Powers.
4. Someone from the sheriff's office called Van Alstein and told him there were bogus prescriptions out there under the name of Gary Powers and to call when someone came in to pick up Powers' prescription.
5. On February 22, 1994, Van Alstein received a call from a female who wanted to know if the prescription for Powers was ready. She said she was going to pay for it with a prescription card.
6. Rhonda from Dr. Ang's office told Van Alstein no one from Ang's office had called in the prescriptions for Gary Powers.

As pointed out above, Van Alstein testified to statements made to him by Deputy Swansey; those same statements were also testified to by Deputy Swansey during his own testimony at trial. Deputy Swansey's testimony about his own statements to Van Alstein and to Officer Gannucci was not objectionable.

Swansey testified he told Van Alstein, as well as fellow officers, there was a person going around calling in fraudulent prescriptions in the name of Margaret Ryan or Gary Powers. Since the statements were properly admissible when they came in by virtue of Swansey's testimony, trial counsel was not ineffective by failing to object when they came in through Van Alstein's testimony. Where the same evidence or argument is presented elsewhere during trial without objection, no reversible error exists. *Cruz v. State*, 877 S.W.2d 863, 868 (Tex.App.—Beaumont 1994, pet. ref'd).

The same is true regarding the statements of Rhonda from Dr. Ang's office. Van Alstein testified Rhonda told him Dr. Ang told her the prescription for Gary Powers (allegedly called in by a "Laura" from Dr. Ang's office) was unauthorized. Trial counsel did not object to his testimony. However, Dr. Ang testified himself to the same fact. Even if Van Alstein's testimony regarding the call from Laura of Dr. Ang's office was inadmissible, the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. *Stoker v. State*, 788 S.W.2d 1, 14 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Testimony by Dr. Ang that he did not authorize the prescription proved up the same fact that Van Alstein had testified to—namely the lack of authorization from Dr. Ang. Consequently, trial counsel was not ineffective for failing to object to Van Alstein's testimony regarding the telephone prescription allegedly called in on behalf of Dr. Ang.

■ Van Alstein also testified to the two phoned-in prescriptions alleged in counts I and II, one for a Margaret Ryan and the other for a Gary Powers. In contrast to appellant's assertion, Van Alstein's testimony did not constitute hearsay. The testimony was not offered and was not relevant because of its truthfulness; the testimony regarding those two calls was admissible because it revealed the reason for Van Alstein's writing down the prescriptions and filling them. The relevancy of the out-of-court statements does not hinge on the truthfulness of the statement, and, consequently, those statements are admissible. *See Perkins v. State*, 902

S.W.2d 88, 98, *supplemented by* 905 S.W.2d 452 (Tex.App.—El Paso 1995, pet. ref'd); *Bell v. State*, 877 S.W.2d 21, 24 (Tex.App.—Dallas 1994, pet. ref'd); Tex.R. Crim Evid. 801(d).

■ Van Alstein further testified he received a call from a female on February 21, 1994, wanting to know if the prescription for Gary Powers was ready. Appellant contends this statement is inadmissible hearsay. According to Van Alstein, the caller said she had an insurance card to pay for the prescription and wanted to give him the information from the insurance card over the phone. Van Alstein told her "[w]e really prefer them to bring the card in because there's a lot of different plans and a lot of specific information on that card and we'd prefer that she bring in the card." The statement by the female caller and Van Alstein's testimony concerning it are admissible, since they show the response evoked from Van Alstein by the officers' communication to him concerning fraudulent prescriptions being passed in the names of Gary Powers and Margaret Ryan. Van Alstein's response was to do what the police told him to—namely to attempt to get the person into the store so that the police could be notified and confront her. Thus, it was permissible for Van Alstein, just as it is for a police officer, to testify concerning his response to the information he received, in this instance, from the police. *See Oberg v. State*, 890 S.W.2d 539, 542 (Tex.App.—El Paso 1994, pet. ref'd); *Beverly v. State*, 795 S.W.2d 846, 847 (Tex.App.—Beaumont 1990, no pet.). The call from the unidentified female caller was relevant to show circumstances surrounding the appellant's presence and arrest at Wal–Mart Pharmacy on February 22, 1994, and was not evidence of any element of the offense charged.

■ Appellant further complains her trial counsel ineffective for failing to effectively cross examine Van Alstein and for failing to cross examine Dr. Ang at all. As to Van Alstein, appellant contends trial counsel should have asked if Van Alstein could identify the caller who phoned in the prescriptions. Under direct examination, Van Alstein stated the caller identified herself as Dr. Bodas'

nurse. He accepted that identification and preceded to fill the prescription. As to Dr. Ang, appellant points to the failure to cross examine Dr. Ang regarding whether he had treated Gary Powers in the distant past. Such questioning was not important to the case, since Dr. Ang unequivocally testified he did not authorize the February 22nd prescription for Gary Powers. Even if Dr. Ang had treated Powers in the distant past, it would not have changed the fact that the prescription was unauthorized.

"Cross-examination is inherently risky, particularly in criminal cases where pre-trial discovery is more limited than in civil cases. A decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd)(citing *Coble v. State*, 501 S.W.2d 344, 346 (Tex.Crim.App. 1973)). "If ineffective, cross-examination can serve to bolster the credibility of the witness and underscore the very points that are sought to be impeached. Thus, unless there is a good basis on which to cross-examine, which appellant has not shown here, it can be more effective to refrain from cross-examining a damaging witness to minimize the impact of his testimony." *Dannhaus*, 928 S.W.2d at 88 (footnote omitted).

■ Appellant cites additional examples of ineffective assistance; i.e., failure to object to the pharmacists' speculation as to whether or not the quantity of the controlled substances in the prescriptions indicated the appellant was an abuser of the substances. Appellant contends the pharmacist was not properly qualified as an expert witness. Appellant is correct. Neither Van Alstein, pharmacist for Wal–Mart, nor Bridgette Ratliff, pharmacist for Kroger, was qualified by the State as an expert; they should not have been allowed to testify regarding the amount of diazepam in the prescription, along with their opinions on substance abuse. Trial counsel should have objected to such testimony. Although no objection was made, we do not conclude the failure constituted ineffective assistance of counsel. The content of the testimony in question did not involve an element of the offense and would not have

affected the outcome of the trial. Moreover, appellant testified on direct examination that she had experienced anxiety problems for which she took diazepam. Trial counsel's failure to object to the pharmacist's testimony may have been part of trial strategy—namely to be forthright and open about her substance abuse problems.

■ Appellant also alleges trial counsel was ineffective in presentation of her case. The case for the defense consisted only of appellant's uncorroborated testimony. At the conclusion of appellant's testimony, her trial counsel approached the bench and announced to the court that appellant's witnesses "haven't arrived yet. . . ." Trial counsel informed the court he "spoke to them last night. They told me they were going to be here." As a result of the non-appearance of appellant's witnesses, the trial court determined the defense had rested; the trial judge then recessed the trial in order to begin preparations for the charge.

However remiss trial counsel may have been in failing to secure the presence of witnesses through issuance of subpoenas, appellant's allegation that trial counsel was ineffective because of his failure to subpoena witnesses for trial is without merit. The record contains no indication of who these witnesses are and what testimony favorable to appellant they could have provided. *See Holland v. State*, 761 S.W.2d 307, 319 (Tex. Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989); *Harling v. State*, 899 S.W.2d 9, 13 (Tex.App.—San Antonio 1995, pet. ref'd).

■ Appellant further alleges his trial counsel was ineffective in pre-trial preparation, because he filed only the following two pre-trial motions: (1) a Motion for Psychological Evaluation; (2) a Motion for Probation and Punishment Assessment. According to appellant, trial counsel "did not follow up" on his Motion for Psychological Evaluation, since he failed to provide the court with additional material on the issue, as he had informed the court he would do at the initial hearing on the motion on May 19, 1994. As a result, appellant's jury trial proceeded without the issue of her competency being

litigated. We have nothing in the record to suggest why trial counsel did not pursue the matter; counsel may not have done so because he ultimately concluded appellant was competent to stand trial. Without something in the record to show us otherwise, we cannot conclude trial counsel's inaction on the motion constituted ineffective assistance of counsel.

In addition, appellant points also to the absence of such pretrial motions as a Motion in Limine or a Motion for Notice of the State's Intent to Admit Extraneous Offenses. "[T]he mere failure of counsel to file appropriate pretrial motions shall not be categorically deemed as ineffective assistance." *Wills v. State,* 867 S.W.2d 852, 857 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd); *Martinez v. State,* 824 S.W.2d 688, 690 (Tex. App.—El Paso 1992, pet. ref'd). In addition, appellant fails to identify a basis in the record for these motions and how these motions would have been beneficial or how results would have been different but for lack of these motions. *Passmore v. State,* 617 S.W.2d 682, 685 (Tex.Crim.App.1981), *overruled on other grounds by Reed v. State,* 744 S.W.2d 112 (Tex.Crim.App.1988). We do not conclude trial counsel was ineffective in regard to the filing and pursuit of pre-trial motions.

Appellant further contends his trial counsel was ineffective because of his failure to object to the jury charge on count I and because of a failure to request a limiting instruction on use of extraneous offenses in the charge. The court's charge included an instruction on the law of parties for both counts on which appellant was charged. Specifically, the charge instructed the jury that it could find the appellant guilty of both counts of the indictment by finding that she committed the offense "acting either alone or as a party." Appellant concedes there may have been evidence she acted as a party on the offense described in count II (February 22 incident at Wal–Mart) of the indictment. However, as to count I, she argues there is no record evidence to support the theory that she acted in any capacity other than alone. Therefore, according to appellant, trial counsel's failure to object to the submission of the

issue of parties on count I allowed the State to carry its burden of proof on that count on a broader basis than it was entitled to according to the evidence.

■ Appellant correctly points out there is no evidence to support the party theory in regard to count I, the February 18, 1994 incident. However, appellant ignores the application paragraph of the charge in which the jury is presented with the alternative of finding appellant acting either alone or as a party in regard to count I. There is sufficient evidence in the record for the jury to have concluded Ryan was acting alone at Wal–Mart Pharmacy on February 18, 1994. That being true, the claimed charge error, if any, was harmless, and trial counsel was not ineffective in failing to object to the instruction. *Brown v. State,* 716 S.W.2d 939, 945–46 (Tex. Crim.App.1986); *Reyes v. State,* 910 S.W.2d 585, 593 (Tex.App.—Amarillo 1995, pet. ref'd).

■ Appellant further contends trial counsel was ineffective because of his failure to request a limiting instruction regarding the extraneous offenses. In *George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App.1994), the Court of Criminal Appeals held that, if requested at the guilt/innocence phase of trial, the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose under TEX.R.CRIM. EVID. 404(b) unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense. Appellant's trial counsel failed to make such a request.

Trial counsel is not necessarily deficient for not requesting a limiting instruction on extraneous offenses. *See Blevins v. State,* 884 S.W.2d 219, 230 (Tex.App.—Beaumont 1994, no pet.); *Abbott v. State,* 726 S.W.2d 644, 649 (Tex.App.—Amarillo 1987, pet. ref'd). In *Abbott,* the court concluded "[a]lthough hindsight speculation may suggest a limiting instruction of some nature, it is reasonable that, as a trial tactic, counsel did not wish to remind the jury of those matters." *Id.* at 649. With nothing in the record to explain why trial counsel did not request the instruction, we can only conclude his trial strategy may have been to not draw further attention to the extraneous offenses. Fur-

thermore, even if trial counsel's performance was deficient, appellant's counsel on appeal provides us with no analysis of how, with reasonable probability, the outcome of the proceeding would have been different, had trial counsel requested the instruction on extraneous offenses. Point of error two is overruled.

### POINT OF ERROR THREE

In point of error three, appellant contends the trial judge abused his discretion when he did not order the appellant examined by a psychologist pursuant to her pretrial motion for psychological examination. Appellant's trial counsel had filed such a pre-trial motion, but there is nothing in the record to indicate a court ordered disposition of the motion.

 Appellant argues the trial court should have appointed a psychologist "to make a threshold inquiry into the appellant's competency" at the May 19 hearing. Instead, the trial court continued the hearing until June 23, 1994, to allow appellant time to gather and present to the court some previous evaluations of appellant, which trial counsel alluded to at the May 19 hearing. Although the trial court reset the hearing for June 23, the statement of facts does not contain the record of such a hearing, if it occurred. We cannot conclude the trial court abused its discretion in its treatment of the Motion for Psychological Evaluation, when we have no record as to whether the trial judge conducted a subsequent hearing on the motion, granted the motion, or denied the motion, as appellant contends. Although trial counsel filed a motion requesting a psychiatric examination for the purpose of determining whether Ryan was competent to stand trial, he never filed a written motion asserting Ryan was incompetent to stand trial. Thus, appellant was entitled to a pre-trial determination of her competency only if the court acted on its own motion. *See Rodriquez v. State,* 816 S.W.2d 493, 495 (Tex. App.—Waco 1991, pet. ref'd).

A defendant is presumed to be competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX.CODE CRIM. PROC. ANN. art. 46.02 § 1(b) (Vernon 1979). "The test of legal competence to stand trial is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Loftin v. State,* 660 S.W.2d 543, 545–546 (Tex.Crim.App.1983); *Valdes–Fuerte,* 892 S.W.2d at 106; TEX.CODE CRIM. PROC. ANN. art. 46.02 § 1(a) (Vernon 1979).

TEX.CODE CRIM. PROC. ANN. art. 46.02 § 3(a) (Vernon 1979) provides as follows:

At any time the issue of the defendant's incompetency to stand trial is raised, the court may, on its own motion or motion by the defendant, his counsel, or the prosecuting attorney, appoint disinterested experts experienced and qualified in mental health or mental retardation to examine the defendant with regard to his competency to stand trial and to testify at any trial or hearing on this issue.

 A trial court is not required to *sua sponte* hold a competency hearing unless sufficient facts or circumstances are brought to the court's attention which constitute evidence to support a finding of incompetency. *See Rodriquez,* 816 S.W.2d at 495. If, during the course of the trial, the court receives evidence which raises a reasonable doubt about the defendant's competency to stand trial, then it must conduct a hearing outside the presence of the jury to determine whether there is evidence to support a finding that the defendant is incompetent to stand trial. TEX.CODE CRIM. PROC. ANN. art. 46.02 § 2(b); *Loftin,* 660 S.W.2d at 546. Appellant points to such indications of appellant's incompetence as: the filing by trial counsel of a Motion for Psychiatric Evaluation; trial counsel's statements at the May 19, 1994, hearing on the Motion for Psychiatric Evaluation to the effect that defendant has some serious, ongoing mental problems; appellant's testimony at trial that she had been hospitalized in Harris County for an emotional breakdown in 1988 and that authorities in the Montgomery County Jail had sent her to see a psychiatrist; the testimony of Kay Whyburn, her attorney in a family law matter (six months prior to the offenses Ryan is charged with herein), that she had questions about whether Ryan "was perceiving reality

real well" at that time; and appellant's sister's testimony that Ryan needed help.

We are of the opinion appellant's testimony during trial is a good barometer of her competency to stand trial; her testimony was clear and lucid, and she made intelligent responses to questions propounded to her. *See Stone v. State*, 638 S.W.2d 629, 632 (Tex. App.—Houston [1st Dist.] 1982, pet. ref'd). We, therefore, hold, after reviewing the record as a whole and, particularly, appellant's testimony, that the record does not contain evidence that would raise a reasonable doubt of her competency to stand trial. Consequently, the trial judge did not abuse his discretion when he did not order appellant to be examined by a psychologist pursuant to her pretrial Motion for Psychological Evaluation. Point of error three is overruled.

Having overruled appellant's three points of error, the judgement and sentence below are affirmed.

AFFIRMED.